ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Catherine M. Lee, State Bar No. 197197
    Catherine.Lee@aalrr.com
Christina C.K. Semmer, State Bar No. 270909
    Christina.Semmer@aalrr.com
1050 Northgate Drive, Suite 520
San Rafael, California 94903-2542
Telephone:  (628) 234-6200
Fax:  (628) 234-6899

Attorneys for Defendant KAISER FOUNDATION HOSPITALS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH O'NEAL, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HOSPITALS, a California nonprofit corporation; MILA MIRANDA, an individual; BARRY O'BRIAN, an individual; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.<br><br>**DEFENDANT KAISER FOUNDATION HOSPITALS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, AND 1446**<br><br>(Marin County Superior Court Case No. CIV2203575) |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Kaiser Foundation Hospitals ("Defendant") hereby removes the action, *Kenneth O'Neal v. Kaiser Foundation Hospitals et al.*, pending in the Superior Court of California, County of Marin, Case No. CIV 2203575, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1441(a) and (c), and 1446. The removal is based on the existence of federal preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* (including § 185) ("LMRA" or "Section 301"). *See* 28 U.S.C. §§ 1331 and 1441. Accordingly, removal is proper based on the following grounds:

## I.  JURISDICTION AND VENUE

1. This Court has original jurisdiction of this matter under 29 U.S.C. § 141 *et seq.*, including § 185(b), in that it is a civil action that presents a federal question. As set forth below, this case meets all the requirements for removal under 28 U.S.C. § 1331, and is timely and properly removed by the filing of this Notice.

2. Under 28 U.S.C. §§ 84(a) and 1441(a), venue is proper in the United States District Court for the Northern District of California because this Court embraces the Superior Court for Marin County, where this action is pending.

## II.  CLAIMS AND PROCEDURAL HISTORY

3. Plaintiff is employed by Defendant Kaiser Foundation Hospitals ("KFH") as a Sterile Processing Technician. Plaintiff has been employed by KFH since on or about October 15, 2018. See Plaintiff's Complaint ("Complaint"), at ¶ 16. A copy of Plaintiff's Complaint is attached as **Exhibit 2** to the Appendix.

4. On May 18, 2022, Plaintiff filed the lawsuit *Kenneth O'Neal v. Kaiser Foundation Hospitals, et al.*, Case No. 34-2022-00320212, against KFH, Mila Miranda, Barry O'Brian, and "Does 1 through 20" in the Superior Court for the County of Sacramento. In the Complaint, Plaintiff alleged the following claims against Defendants: (1) discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) harassment in violation of the FEHA; (3)

retaliation in violation of the FEHA; (4) failure to prevent discrimination, harassment, and retaliation in violation of the FEHA; (5) retaliation in violation of the California Family Rights Act ("CFRA"); (6) retaliation in violation of California Labor Code § 1102.5 (the "Labor Code"); and (7) negligent supervision and retention. *See* **Exhibit 2** to the Appendix (Complaint).

5. On July 21, 2022, pursuant to Plaintiff's Request for Dismissal, the Sacramento Superior Court dismissed, without prejudice, the individual defendants, Mila Miranda and Barry O'Brian. A copy of the conformed Request for Dismissal is attached as **Exhibit 7** to the Appendix. Individual defendants Mila Miranda and Barry O'Brian were never served with the Summons and Complaint. Declaration of Christina C.K. Semmer ("Semmer Decl."), at ¶ 3.

6. On October 18, 2022, the Sacramento Superior Court entered an Order granting the parties' Joint Stipulation to Transfer Venue from the Superior Court for Sacramento County to the Superior Court for Marin County. A copy of the Notice of Entry of Order is attached as **Exhibit 20** to the Appendix.

7. On December 16, 2022, Plaintiff sent to Defendant's counsel a Notice and Acknowledgment of Receipt with a copy of the Summons and Complaint and the Civil Case Cover Sheet. Semmer Decl., ¶ 5. On January 5, 2023, Defendant, through its attorney, timely signed and returned to Plaintiff the executed Notice and Acknowledgment of Receipt. *Id.*, at ¶ 6. As such, Defendant was served with the Summons and Complaint in this case on January 5, 2023. *See* Cal. Civ. Proc. Code § 415.30 (providing that "this summons is deemed served on the date of execution of an acknowledgment of receipt of summons"); *Thierfeldt v. Marin Hosp. Dist.*, 35 Cal.App.3d 186, 199 (1973) (holding that service is not properly effected until the defendant executes and returns an acknowledgment of service). A copy of the executed Notice and Acknowledgment of Receipt is attached as **Exhibit C** to the Semmer Decl.

### III. FEDERAL QUESTION JURISDICTION EXISTS BASED ON LMRA SECTION 301 PREEMPTION

**A.    Federal Preemption Under Section 301 Of The LMRA**

8. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil action that presents

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1050 NORTHGATE DRIVE, SUITE 520
SAN RAFAEL, CALIFORNIA 94903-2542
TELEPHONE: (628) 234-6200
FAX: (628) 234-6899

a federal question.

9. Federal question jurisdiction arises out of the fact that Plaintiff's claims and allegations are substantially dependent on, require interpretation of, or are inextricably intertwined with, the Collective Bargaining Agreement ("CBA") between KFH and Plaintiff's union, the Service Employees International Union-United Healthcare Workers West ("the Union"). *See* **Exhibit 2** to the Appendix (Complaint), ¶ 49.

10. Section 301 provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regarding to the amount in controversy or without regarding to the citizenship of the parties." *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). Though the language of Section 301 references "suits for violation of contracts," the United States Supreme Court has construed Section 301 "quite broadly to cover most state-law actions that require interpretation of labor agreements." *Associated Builders & Contractors, Inc. v. Local 302 Intern. Broth. of Elec. Workers*, 109 F.3d 1356, 1356-57 (9th Cir. 1997) (citing *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985)). Section 301 also preempts state law claims if their evaluation is "inextricably intertwined" with consideration of the terms of a labor contract. *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991).

11. Section 301 creates a mandate for federal courts to develop a federal common law for interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 456 (1957); *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). To ensure uniform interpretations of such union contracts, federal common law wholly preempts the use of any state law, including state contract law, in connection with collective bargaining agreement interpretation and enforcement. *See Lingle*, *supra*, 486 U.S. 399, 411; *accord Lucas Flour Co.*, 369 U.S. at 103-04. Because of "the unusually 'powerful' pre-emptive force of Section 301," this is true even where a plaintiff seeks relief "only under state law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003) (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557

(1968)).

12. Courts have repeatedly confirmed that the scope of Section 301 preemption is very broad. The "preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . [and] any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988) (emphasis added); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction"). Thus, any state law claim that substantially depends on, requires interpretation or analysis of, or is inextricably intertwined with, a collective bargaining agreement for its resolution is preempted, and may only be brought pursuant to federal principles under Section 301. *Allis-Chalmers Corp.*, *supra*, 571 U.S. 202, 211; *Newberry*, *supra,* 854 F.2d 1142, 1146. This includes any state law claim where its resolution depends in whole or in part on analysis or interpretation of a collective bargaining agreement. *See id*.

13. Section 301 has specifically been held to preempt California state law claims that are substantially dependent upon interpretation or analysis of a collective bargaining agreement for their resolution. *See, e.g., Firestone*, *supra,* 219 F.3d 1063, 1066–67. This is so even where interpretation was required to evaluate the employer's defense to a plaintiff's state law causes of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003); *accord Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 624 (1989).

**B.     Plaintiff's Employment Is Governed By The CBA**

14. It is undisputed that Plaintiff is a member of the Union and that the terms and conditions of Plaintiff's employment with KFH are governed by the CBA. *See e.g*., **Exhibit 2** to the Appendix (Complaint), ¶ 49 ("Mr. O'Neal was guaranteed these positions under the terms of the collective bargaining agreement between Service Employees International Union-United Healthcare Workers West ("SEIU-UHW") and Kaiser Foundation if he had seniority over others who applied"); ¶ 54 (alleging that under the CBA that governed his employment, "jobs should be offered in order of seniority, not at the management's own discretion, and that only a formal

written discipline could disqualify [Plaintiff] from getting the position. Therefore, a verbal warning could not have disqualified Mr. O'Neal from being offered the positions."); ¶ 56 (alleging Plaintiff was denied for a full-time position "in blatant breach of the [Union] contract"); ¶ 58 (alleging a Union "grievance meeting"); ¶ 59 (alleging communications with the "SEIU-UHW contract specialist" and that Defendant's reference to a "'hiring freeze' was a lie made to cover up [Defendant manager] O'Brian's blatant breach of the collective bargaining agreement"); ¶ 66 (alleging one of Defendant's managers told Plaintiff to "get a [Union] shop steward[;] I'm sick of this sh*t""); and ¶ 67 (alleging Defendant gave Plaintiff's work hours to staff with less seniority in violation of the terms of the CBA due to his association with someone who has a medical condition and/or disability).

15. The Union is a labor organization that acts as the exclusive representative of Plaintiff, and deals with KFH regarding employees' grievances, labor disputes, wages, rates of pay, hours of employment, and terms and conditions of work. *See* Declaration of Grace Putulin ("Putulin Decl."), **Exhibits A** and **B** (Collective Bargaining Agreements) at ¶ 4 to Putulin Decl. Thus, it is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"), and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

16. As part of the CBA, the Union and KFH are parties to a "labor-management partnership," by which they pledged to work together for common goals. *See* **Exhibit B** to Putulin Decl. (CBA), at § 636. In relevant part, the CBA governs discipline and discharge of members of the Union; Union seniority and how it is defined; eligibility for bidding for positions; transfers and promotions; work schedules, hours of work, and changes in an employee's schedule; and rest and meal periods for Union members. *Id.*[1] at § 1077 *et seq.* ("Article XXI – Discipline and Discharge"); § 571 *et seq.* ("Article XVI – Seniority"); § 581 *et seq.* ("Section 2 – Promotions, Transfers and Seniority"); § 308 *et seq.* ("Section 3 – Schedules"); § 329 ("Section 7 – Rest

---

[1] Plaintiff alleges that he has been employed by KFH since October 2018. *See* **Exhibit 2** to the Appendix (Complaint), ¶ 16.) Accordingly, Plaintiff's employment has been governed by two SEIU-UHW Collective Bargaining Agreements with KFH. *See* Putulin Decl., ¶ 4 & **Exhibit A** and **Exhibit B**.

Periods and Meal Periods"); § 1125 ("Article XXV – Duration of Agreement"). The CBA also sets forth a procedure for settling grievances, which includes "every dispute concerning interpretation and application of this Agreement." *Id*. at § 1093 *et seq.* ("Article XXII – Grievance and Arbitration Procedure".) The CBA explains that "[a]ll such disputes shall be subject to the grievance procedure." *Id*.

**C.   Plaintiff's Claims Are Preempted By The LMRA Because They Will Require Substantial Interpretation Of, Or Are Inextricably Intertwined With, The CBA.**

17.   FEHA claims, like any other state law claims, are subject to LMRA preemption when their resolution substantially depends on analyzing the express or implied terms of a collective bargaining agreement. *See, e.g., Audette v. Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (discrimination claim was preempted where its resolution turned on "defendants' offer of a legitimate nondiscriminatory reason requiring interpretation of the collective bargaining agreement"); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir. 1985) (affirming district court's finding that claims for harassment, IIED, and negligent employment were preempted by Section 301 of the LMRA); *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F.Supp.2d 1244, 1253 (C.D. Cal. 2000) (where proof of plaintiff's *prima facie* case for race discrimination under FEHA required interpretation of the CBA, and defendant's articulated non-discriminatory reasons for its actions would almost certainly require interpretation of the CBA, claim was preempted by the LMRA).

18.   Indeed, state law claims that arise out of the implementation of CBA procedures for hiring, work assignments, and discipline – and similar to Plaintiff's claims asserted here – are held preempted by Section 301. *See, e.g., Silva v. USF Reddaway Inc.*, No. 17-cv-01354-LB, 2017 WL 2117397, at *4 (N.D. Cal. May 15, 2017) (holding that Section 301 of the LMRA preempts plaintiff's FEHA and "common law" disability discrimination claims because plaintiff's claim will likely "necessitate determining whether CBA imposed an obligation on [defendant employer] to offer him a line-driving position or whether, as the defendant claims, its obligations under the CBA prevented it from doing so – which could disprove [plaintiff's] claim that [defendant employer] wrongfully discriminated against him"); *Guidry v. Marine Engineers & #039;*

*Beneficial Ass'n*, No. C 11-05347 CRB, 2012 WL 646302, at *4 (N.D. Cal. Feb. 28, 2012) (holding that Section 301 of the LMRA preempts plaintiff's FEHA and IIED claims because adjudication of those claims "calls for substantial interpretation of the CBA"); *Armstrong v. WB Studio Enter.*, No. CV 19-9587-GW-JPRx, 2020 WL 1967566, at **3-5 (C.D. Cal. Apr. 24, 2020) (FEHA discrimination, harassment, retaliation, and other state law claims preempted under the LMRA where, despite allegations of failure to hire due to protected characteristics, interpretation of the CBA's hiring provisions would be necessary to resolve claims); *Kroeger v. L3Techs, Inc.*, No. 2:17-cv-08489-JFW-AGR, 2018 WL 1357363, at *4 (C.D. Cal. Mar. 15, 2018) (discrimination and retaliation claims were preempted by the LMRA where plaintiff alleged adverse actions based on violations of the CBA); *see also Carr v. Allied Waste Sys. of Alameda County*, No. C 10-0715 PJH, 2010 WL 4916433, at *15 (N.D. Cal. Nov. 23, 2010) (holding that a "wrongful termination … claim is preempted where the court would be required to analyze and interpret the [just cause] provisions of the CBA to determine whether [the plaintiff] … was wrongfully terminated") (internal quotations omitted).

19.     *Bachilla v. Pac. Bell Tel. Co.*, No. Civ. S-07-739 RRB KJM, 2007 WL 2765689 (E.D. Cal. Sept. 19, 2007) is illustrative. There, plaintiff alleged sex discrimination because her employer promoted male co-workers with less seniority in violation of the CBA, which dictated that promotions were based on seniority. *Id*. at *1. Though the claim was based on state law claims, the court found that resolution of the discrimination claim was substantially dependent on an analysis of the CBA because the terms of plaintiffs' employment, including their eligibility for promotions, were governed by the seniority rules under the CBA. *Id*. at **5-6. The court further noted that the employer would undoubtedly assert – as a defense – that it complied with the procedures set forth in the CBA governing promotions. Thus, resolution of the state discrimination claims would turn on defendant's offer of legitimate non-discriminatory reasons, which would require interpretation of the CBA. *Id*. Simply put, the *Bachilla* plaintiff's claim was "inextricably intertwined" with the terms of the CBA because the court would be required to interpret the seniority and transfer provisions of the CBA to determine whether the action taken was for legitimate reasons (i.e. required by the CBA) or illegitimate reasons (i.e. discrimination).

1 Thus, the discrimination claims were therefore preempted by the LMRA and removal was proper.
2 *Id.* at *6.

3       20.    Akin to *Bachilla,* here, an analysis and interpretation of the CBA between the
4 Union and KFH is central to the resolution of all of Plaintiff's claims, in addition to Defendant's
5 defenses. Each of Plaintiff's discrimination and retaliation claims (FEHA discrimination, FEHA
6 retaliation, retaliation in violation of the CFRA, and retaliation in violation of Labor Code §
7 1102.5) require the existence of an adverse employment action. *Guz v. Bechtel Nat'l, Inc.*, 24
8 Cal.4th 317, 355 (2000) (FEHA discrimination); *Yanowitz v. L'Oreal USA Inc.*, 36 Cal.4th 1028,
9 1042 (2005) (FEHA retaliation); *Rogers v. County of Los Angeles,* 198 Cal. App. 4th 480, 491
10 (2011) (CFRA retaliation); *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712
11 (2022) (Labor Code § 1102.5 retaliation). Based on a thorough reading of Plaintiff's Complaint,
12 Plaintiff appears to allege the existence of two adverse employment actions: (1) that Plaintiff's
13 application for a full-time position was "wrongfully denied in favor of someone with less seniority
14 and in breach of the Collective Bargaining Agreement", and that the disciplinary "warning" he
15 received should not have disqualified him from consideration for the position under the CBA; and
16 (2) that "Defendants discriminated and retaliated against Plaintiff by giving his hours to staff with
17 less seniority in violation of the terms of the collective bargaining agreement between SEIU-UHW
18 and Kaiser Foundation…." *See* **Exhibit 2** to Appendix (Complaint), p. 8, Subheading and ¶¶ 48-
19 59, 67.

20       21.    As in the cases cited *supra*, determining whether the purported denial of a full-time
21 position and the purported re-assignment of Plaintiff's work hours to staff with less seniority will
22 require the Court to assess and interpret the CBA's provisions relating to promotions/transfers,
23 seniority, and work schedules. For example, Plaintiff alleges that, under the CBA, only "formal
24 written discipline" could disqualify him from consideration for the position, and he contends that
25 the discipline he received, which he characterizes as a "verbal warning", was insufficient to
26 disqualify him. *See* **Exhibit 2** to Appendix (Complaint), ¶ 54. As such, the precise meaning of
27 the CBA's term "formal written discipline" must be analyzed and interpreted. *See* **Exhibit B** to
28 Putulin Decl. (CBA), § 596 ("Northern California Region Eligibility for Bidding"). This will

require the presentation of evidence and testimony regarding the different levels of discipline under the CBA, how the Union and KFH's Human Resources and Labor Relations department have interpreted this language in the past, and how this language was applied in Plaintiff's case, etc.

22. Similarly, in determining whether Plaintiff was denied the position to which he applied and/or had "his" work hours reassigned to other staff for discriminatory/retaliatory reasons or based on legitimate business reasons, including Plaintiff's seniority vis-à-vis the other employees, the Court will need to analyze the CBA's provisions regarding seniority, schedules, and promotions/transfers; whether and how these provisions were applied in each instance; whether KFH's conduct violated the CBA (as Plaintiff alleges); and whether Plaintiff's time away from work due to sick time or any leaves of absence to care for his son affected his seniority, etc. Based on these considerations, it is clear that an analysis and interpretation of the provisions of the CBA are central to all of Plaintiff's discrimination and retaliation claims (and his "failure to prevent" claim, which is premised on the existence of actionable discrimination and retaliation). *See Trujillo v. North County Transit Dist.,* 63 Cal.App.4th 280, 289 (1998) ("Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.")

23. As for Plaintiff's FEHA harassment claim and negligent supervision and retention claim, to the extent those claims are premised on the same allegations underlying his discrimination and retaliation claims (i.e., that Defendant denied him a position in favor of, and reassigned "his" work shifts to, less senior employees, in violation of the CBA), they are preempted under Section 301 of the LMRA for the same reasons.

24. In addition, underlying his harassment claim and negligent supervision and retention claim, Plaintiff alleges that Defendant (through its managers) improperly "reprimanded" and disciplined him for his attendance; "follow[ed]" Plaintiff around, including to make sure he did not exceed his paid 15-minute rest break (which is provided under the CBA); and "yell[ed]" at him, including by saying "get a shop steward" because "I'm sick of this sh*t". *See* **Exhibit 2** to Appendix (Complaint), ¶¶ 53-54, 61-66. In *Truex v. Garrett Freightlines, Inc.* the Ninth Circuit

- 10 -

1  concluded that similar claims for harassment, IIED, and "negligent employment" were preempted
2  by Section 301 of the LMRA because "claims that [the employer and its managers] issued
3  [plaintiffs] unjustified warning letters, conducted excessive supervision of them, and altered their
4  work assignments are in essence claims that administration of discipline was improper under the
5  standards set by the collective bargaining agreements." 784 F.2d 1347, 1350. So, too, are
6  Plaintiff's harassment and negligent supervision and retention claims preempted under Section
7  301 of the LMRA, as is Plaintiff's "failure to prevent claim" to the extent it is premised on alleged
8  harassment.
9  Hence, for the reasons set forth above, this Court has federal question jurisdiction over all
10 of Plaintiff's claims.

11 **IV.    SUPPLEMENTAL JURISDICTION**

12    25.    This Court also has supplemental jurisdiction over any of Plaintiff's remaining state
13 law claims, to the extent they are not completely preempted by Section 301, or are not so
14 inextricably intertwined with or dependent on an interpretation of the CBA, because they relate to
15 and emanate from the same employment relationship that is the subject of the federal question
16 claims. 28 U.S.C. § 1367(a). Even if the Court does not find that all of Plaintiff's claims are
17 preempted, any remaining claims are so related to the preempted federal claims that they emanate
18 from, and form part of, the same "case or controversy," such that they should all be tried in one
19 action. *See id.*; *accord Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir.
20 1990). Thus, any such non-preempted claims are still removable under 28 U.S.C. § 1441(c) and
21 this Court's supplemental jurisdiction.

22 **V.    TIMELINESS**

23    26.    Removal is timely under 28 U.S.C. § 1446(b) if a notice of removal is filed within
24 30 days after the defendant receives, "through service or otherwise, a copy of the initial pleading
25 setting forth the claim for relief upon which such action or proceeding is based." *See Murphy*
26 *Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999) (interpreting 28 U.S.C. §
27 1446(b)(1)'s phrase "through service or otherwise" to mean that "a named defendant's time to
28 remove is triggered by simultaneous service of the summons and complaint"; holding that sending

- 11 -
DEFENDANT KAISER FOUNDATION HOSPITALS' NOTICE OF REMOVAL OF
ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, AND 1446

a courtesy fax of the complaint – with no summons – was insufficient); *Bush v. Cheaptickets, Inc.*, 425 F.3d 683, 688 (9th Cir. 2005) (explaining that "through service or otherwise" means formal service and not through service of a courtesy copy of the complaint).

27.    Here, Defendant timely filed this Notice of Removal within thirty (30) days of the date it was formally served with the Summons and Complaint. Defendant was served with the Summons and Complaint on January 5, 2023, when Defendant (through its counsel) signed and returned to Plaintiff (through his counsel) the Notice and Acknowledgment of Receipt of the Summons and Complaint. Semmer Decl., ¶¶ 5-6; *see* Cal. Civ. Proc. Code § 415.30 (providing that "this summons is deemed served on the date of execution of an acknowledgment of receipt of summons"); *Thierfeldt, supra,* 35 Cal.App.3d 186, 199 (holding that service is not properly effected until the defendant executes and returns an acknowledgment of service). The last day for Defendant to file a notice of removal in this case is February 6, 2023. Thirty days from January 5, 2023 is Saturday, February 4, 2023. As such, the deadline for Defendant to take action with respect to Plaintiff's Complaint is Monday, February 6, 2023. *See* Fed. R. Civ. P. 26(a)(1)(C) ("When the period is stated in days or a longer unit of time: . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.")

## VI.    **JOINDER/CONSENT**

The only defendants named in the Complaint are Kaiser Foundation Hospitals, and fictitiously named Doe defendants, as Plaintiff previously dismissed, without prejudice, the individual defendants, Mila Miranda and Barry O'Brian.[2] Defendant is not aware of any other defendant that exists, who has been named in the Complaint, or who has been served with a Summons and the Complaint. *See* Semmer Decl., ¶ 3. "[U]nknown defendants sued as 'Does' need not be joined in a removal petition." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980). As such, Kaiser Foundation Hospitals, as the only named defendant that has been served, consents to the removal of this case to federal court.

---

[2] Ms. Miranda and Mr. O'Brian were never served with the Summons and Complaint. Semmer Decl., ¶ 3.

**VII.    NOTICE TO SUPERIOR COURT AND PLAINTIFF**

In accordance with 28 U.S.C. § 1446(d), this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Marin.

In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action, which was served on Defendant or filed by Defendant are attached to the Appendix filed concurrently herewith as Exhibits 1 through 29.  Other documents relevant to this Notice of Removal are attached to the Declaration of Grace Putulin filed concurrently herewith as Exhibits A through B and the Declaration of Christina C.K. Semmer filed concurrently herewith as Exhibit C.

**WHEREFORE**, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of Marin to the United States District Court for the Northern District of California.

Dated:  February 3, 2023                    ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____
Catherine M. Lee
Christina C.K. Semmer
Attorneys for Defendant KAISER
FOUNDATION HOSPITALS

- 13 -
DEFENDANT KAISER FOUNDATION HOSPITALS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, AND 1446